# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy St. Eve | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2437 | **DATE** | 6/5/2003 |
| **CASE TITLE** | Diersen vs. Walker | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For reasons stated in the attached Report and Recommendation, the Court concludes that none of the sanctions sought by Diersen, including default, evidence preclusion, and adverse inferences, are warranted here. Plaintiff's Motion for Sanctions for Spoilation of Relevant Documents should be denied. Plaintiff's motion to compel discovery is denied as moot [77-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 06 2003 date docketed | 107 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK 03 JUN -5 PM 5:47 | 6/5/2003 date mailed notice | |
| ✓ | Copy to judge/magistrate judge. | | | |
| cav | courtroom deputy's initials | 01-03-0374 Date/time received in central Clerk's Office | cav6 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID JOHN DIERSEN, | ) | **DOCKETED** |
| Plaintiff, | ) | JUN 0 6 2003 |
| v. | ) | No. 00 C 2437 |
| | ) | Judge Amy J. St. Eve |
| DAVID M. WALKER, | ) | Magistrate Judge Nan R. Nolan |
| Comptroller General of the | ) | |
| United States of America | ) | |
| Defendant. | ) | |

To: The Honorable Amy J. St. Eve
United States District Court Judge

## REPORT AND RECOMMENDATION

Nan R. Nolan, United States Magistrate Judge

Plaintiff David John Diersen ("Diersen"), a former employee of the General Accounting Office (the "GAO"), brings this *pro se* action against David M. Walker in his capacity as Comptroller General of the GAO. Diersen alleges, among other things, that he was denied various promotions and forced into early retirement because of age, race, and gender discrimination and retaliation. The GAO denies these claims. This matter is now before the Court on Diersen's Motion for Sanctions for Spoliation of Relevant Documents. For the reasons explained below, the Court recommends that Diersen's motion be denied.

## BACKGROUND

On October 31, 2002, this Court granted Diersen's unopposed motion to compel and ordered GAO to produce "copies of all written affirmative action (AA), equal employment (EEO), and diversity expectations since 1986 that GAO gave three former managers of its Chicago Field Office, Joseph E. Totten (Totten), Luke, and Leslie G. Aronovitz (Aronovitz) and the reports that Totten,

107

Luke, and Aronovitz submitted detailing the actions they took to meet those expectations."[1] On November 11, 2002, GAO was ordered a second time to produce these documents.

By letter dated November 18, 2002, defense counsel informed Diersen that the only material responsive to Diersen's request and the Court's orders was "performance expectations of Senior Executive Service ("SES") Members that were sent to SES employees, including Totten, Luke and Aronovitz, as well as the individual responding SES Performance Contract/Assessments from Totten, Luke, and Aronovitz." Exh.1 to Def's Resp. to Pl's Motion to Compel Discovery (dated February 10, 2003). GAO then provided Diersen with memoranda entitled GAO Performance Expectations of Senior Executive Service ("SES") Members from 1997 through the present. Id. Defense counsel also located directly from Aronovitz her SES Performance Contract/Assessments from fiscal years 1992-1993, 1995-1996, 1996-1997, 1997-1998, 1999-2000, and 2000-2001 and copies were furnished to Diersen. Aronovitz located some copies of the GAO Performance Expectations of Senior Executive Service ("SES") Members that were furnished directly to her and copies of these documents were provided to Diersen. Defense counsel also informed Diersen that GAO had not been able to locate any SES Performance Contract/Assessments from Luke or Totten since they had been retired for a number of years and GAO was in the process of determining whether their personnel files were still warehoused or had been destroyed.

On November 19, 2002, this Court again ordered GAO to produce the documents sought by Diersen in his unopposed motion to compel. By letter dated December 13, 2002, defense counsel

---

[1] According to Diersen, Totten managed GAO's Chicago office between 1986 and 1989, Luke managed GAO's Chicago office between 1990 and 1994, and Aronovitz has managed GAO's Chicago office since 1995. Totten retired from GAO approximately fifteen years ago and Luke retired in 1999.

informed Diersen that GAO located two SES Performance Contract/Assessments for Luke, one for the rating period of October 1, 1997 through September 30, 1998 and one for the rating period of October 1, 1998 through September 30, 1999. Defense counsel further reported that GAO was unable to locate any additional performance appraisals for either Luke or Totten and that any additional performance appraisals had been destroyed in accordance with GAO regulations. Exh. 3 to Def's Resp. to Pl's Motion to Compel Discovery (dated February 10, 2003).

On January 21, 2003, Diersen filed a second motion to compel seeking production of these same documents. GAO's response included the Declaration of Laura A. Chase, a Human Capital Assistant for GAO. Exh. 4 to Def's Resp. to Pl's Motion to Compel Discovery (dated February 10, 2003). Chase's responsibilities as a Human Capital Assistant include maintenance of Senior Executive Service (SES) program performance contracts/assessments and performance expectations memoranda. Id. at ¶ 1. In her declaration dated February 6, 2003, Chase explained that "[p]ursuant to GAO Order 0413.1, GAO Comprehensive Records Schedule (June 30, 1998), SES performance appraisals, including the job elements and the standards upon which they are based, are destroyed five years after the date of the appraisal. Accordingly, SES performance contracts/assessments and expectations memoranda dated prior to FY 1998 are not available." Id. at ¶ 2. Chase further stated: "To the best of my knowledge and belief, I have retrieved all available SES performance contracts/assessments for Mr. John Luke and Ms. Leslie Aronovitz, along with all available and corresponding performance expectations. To the best of my knowledge and belief, there are no such records available for Mr. Joseph Totten." Id. at ¶ 3.

After reviewing the parties' submissions, this Court found that Diersen was entitled to conduct discovery concerning the circumstances surrounding the destruction of the Totten and Luke

SES performance appraisals. The Court directed Diersen to file a written statement detailing the specific discovery he wished to conduct on the limited issue of the circumstances surrounding the destruction of the Totten and Luke SES performance appraisals. See Order dated March 27, 2003. On April 25, 2003, the Court ordered GAO to provide Diersen with the following discovery:

1.  GAO shall provide Diersen with the following information concerning the Totten and Luke SES performance appraisals: (a) any and all documents which specify the identity of the persons who requested the destruction of these documents, authorized the destruction, and destroyed the documents; (b) the purported authorities under which the documents were destroyed; (c) when the documents were destroyed; and (d) where the documents were destroyed.

2.  GAO shall contact Totten and Luke and request that Totten and Luke explain the searches they made to attempt to locate the missing SES performance appraisals. GAO shall then provide Diersen with a written explanation of the searches made by Totten and Luke for the missing SES performance appraisals.

3.  GAO shall determine whether it is possible to reconstruct any AA, EEO, and diversity expectations contained in the missing Totten and Luke SES performance appraisals. GAO shall inform Diersen in writing of whether it is possible to reconstruct this information.

4.  GAO shall provide the Court and Diersen with a written statement detailing the specific searches that have been conducted to attempt to locate the missing Totten and Luke SES performance appraisals. The statement shall include the names of the GAO personnel conducting the searches.

5.  GAO shall provide Diersen with the following documents: (a) all versions of GAO Order 0413.1 since 1980; (b) all versions of GAO Order 0410.1 since 1980; (c) all DOJ and GAO documents that contain polices, practices, or procedures relating to the identification and preservation of documents containing information related to potential or actual litigation against GAO; (d) all documents issued by DOJ to GAO concerning the identification or retention of documents concerning claims made in the Chennareddy case and this case; and (e) all documents issued by GAO concerning the identification or retention of documents concerning claims made in the Chennareddy case and this case.

The Court ordered GAO to provide the above discovery by May 5, 2003. On May 5, 2003, GAO provided the Court and Diersen with its Response in Compliance with April 25, 2003 Magistrate's

Order.[2] On May 21, 2003, Diersen filed his current "motion for sanctions for spoliation of relevant documents." The parties have fully briefed the matter, and the motion is now ripe for ruling.

## DISCUSSION

"The Court's authority to sanction a party for the failure to preserve and/or produce documents is both inherent and statutory." Danis v. USN Communications, Inc., 2000 WL 1694325, *30 (N.D.Ill. Oct. 23. 2000). Diersen appears to be proceeding under Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent power to punish conduct that abuses the judicial process. The "analysis is essentially the same" whether proceeding under Rule 37 or under a court's inherent powers. Id. Diersen moves for a default judgment against GAO for its destruction of expectations memoranda and Totten and Luke SES performance appraisals.[3] In the alternative, Diersen asks the Court to draw the inference from the document destruction that the destroyed documents would have provided evidence unfavorable to GAO.[4]

---

[2] In his current motion, Diersen argues that GAO's Response was inadequate for numerous reasons and he now seeks additional information from GAO. Diersen's request for any further discovery is denied. The parties appeared before the Court on May 6, 2003 for a status and to set a briefing schedule on the spoliation motion. At that time, Diersen did not state that he believed any deficiencies existed in GAO's Response and he did not ask for additional discovery. It is too late to conduct further discovery. Discovery is closed. Diersen's spoliation motion is fully briefed and dispositive motions are due by June 13, 2003.

[3] Diersen requests various additional sanctions (i.e. a finding that GAO's affirmative action goals were illegal quotas, exclusion of all evidence in opposition to Diersen's claims that GAO's goals were illegal quotas, and an order striking GAO's denials concerning Diersen's claims that GAO's goals were illegal quotas).

[4] Diersen also seeks an order finding that "former Comptroller General Elmer Staats (Staats), former Comptroller General Charles Bowsher (Bowsher), former Acting Comptroller General James Hinchman (Hinchman), and Comptroller General David Walker (Walker) are personally responsible for GAO's illegal quotas during their terms in office and responsible for the spoliation of documents relevant to GAO's illegal quotas that took place during their terms in office." Diersen has not established that a finding of "illegal quotas" is appropriate or that Staats, Bowsher, Hinchman, and Walker should be held personally responsible for the destruction of the expectations memoranda and

"Because a default judgment deprives a party of a hearing on the merits, the harsh nature of this sanction should usually be employed in extreme situations where there is evidence of wilfulness, bad faith, or fault by the noncomplying party." Danis, 2000 WL 1694325 at *33. "Bad faith" means destruction "for the purpose of hiding adverse information." Mathis v. John Morden Buick, Inc., 136 F.3d 1153, 1155 (7th Cir. 1998). "[W]ilfulness and bad faith are associated with conduct that is intentional or reckless . . . ." Long v. Steepro, 213 F.3d 983, 987 (7th Cir. 2000). "Fault" is unconcerned with the non-complying party's subjective motivation, but rather describes the reasonableness of the conduct. Langley v. Union Electric Co., 107 F.3d 510, 514 (7th Cir. 1997). Fault may include "gross negligence" or "a flagrant disregard" of the duty to "preserve and monitor the condition" of material evidence. Marrocco v. Gen. Motors, 966 F.2d 220, 224 (7th Cir. 1996).

---

Totten and Luke SES performance appraisals. As a further alternative, Diersen requests an order finding GAO in contempt of court for refusing to provide administrative documents that evidence which GAO employees requested and authorized the destruction, which specific documents were destroyed, and the specific dates the documents were destroyed; for refusing to make adequate efforts to locate copies of the documents it destroyed; for refusing to provide Diersen with declarations from all responsible former and current GAO employees concerning their searches for the documents; and for refusing to reconstruct from other sources the information it destroyed. Diersen has not shown that GAO refused to provide any documents evidencing which GAO employees requested and authorized the destruction of the missing documents, which specific documents were destroyed, and the specific dates the documents were destroyed. GAO represented that no such documents exist. Diersen has also not shown that GAO failed to make adequate efforts to locate the missing documents or to attempt to reconstruct the destroyed information. Diersen has not cited any authority under which GAO can require former employees to provide declarations. Moreover, Diersen has been provided a declaration by Laura Chase, a current employee responsible for searching for the missing documents, and a statement from Michael E. Hatch, a Senior GAO Attorney, involved in searching for the missing documents. Finally, Diersen seeks to conduct additional, but undefined discovery "concerning GAO's AA goals" and to extend discovery "concerning GAO's AA goals." Diersen's request to conduct additional discovery and to extend the discovery deadline is denied. This Court has previously provided numerous discovery extensions, and Diersen has not provided any valid reason for reopening discovery at this late date in the litigation.

The Seventh Circuit has held that a finding of prejudice is not required before a court dismisses or enters judgment as a sanction under its inherent power but has also recognized that "dismissal or judgment is such a serious sanction that it should not be invoked without first considering what effect–if any–the challenged conduct has had on the course of the litigation." Barnhill v. U.S., 11 F.3d 1360, 1368 (7th Cir. 1993). The Court is given broad discretion to choose the appropriate sanction for discovery violations given the unique factual circumstances of the case. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642-43 (1976); Long, 213 F.3d at 988 (stating "courts have considerable discretion in imposing sanctions to control their dockets."). However, a court's discretion to sanction litigants is not unfettered. "An award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery." Crown Life Ins. Co. v. Craig, 995 F.2d 1376, 1382 (7th Cir. 1993).

"A prerequisite to the imposition of sanctions for spoliation is a determination that the party, which destroyed the documents, had an obligation to preserve them." Cohn v. Taco Bell Corp., 1995 WL 519968, *5 (Aug. 30, 1995). Parties in litigation have a duty to preserve relevant evidence "over which the non-preserving party had control and reasonably knew or could reasonably foresee was material to a potential legal action." China Ocean Shipping (Group) Co., v. Simone Metals, Inc., 1999 WL 966443, *3 (N.D. Ill. Sep. 30, 1999).

GAO states that the Totten and Luke performance appraisals as well as the job elements and standards upon which they were based were destroyed pursuant to the document retention policy of GAO embodied in GAO Order 0413.1. GAO Order 0431.1 provides for the destruction of SES performance appraisals, as well as the job elements and standards upon which they are based, five years after the date of the appraisals. Thus, SES performance appraisals and expectations

memoranda dated prior to fiscal year 1998 are not available.[5] These circumstances suggest that the documents were destroyed under routine procedures and not in bad faith. Coates v. Johnson & Johnson, 756 F.2d 524, 551 (7th Cir. 1985) (holding if documents were destroyed under routine procedures, and not in bad faith, the circumstances cannot sustain an inference that the defendant's agents were "conscious of a weak case.").

Diersen points out that GAO has admitted that it has no written policy or procedures regarding the retention of documents containing information related to potential or actual litigation against GAO. See Def's Resp. in Compliance with April 25, 2003 Magistrate's Order. While GAO need not have an official written policy regarding the preservation of documents related to litigation to avoid sanctions, GAO must comply with its duty to preserve relevant evidence regardless of its document retention policy contained in GAO Order 0413.1. Thus, GAO's reliance on GAO Order 0413.1 does not end the inquiry concerning whether GAO had a duty to preserve the destroyed documents and if so, its level of culpability for that breach.

GAO argues that given the limited scope of his administrative claim, "[t]here was no way for GAO to deduce that any possible EEO communications between Senior Executive Service supervisors (like Totten, Luke and Aronovitz) and their supervisors had any bearing on Diersen's assignment in the Chicago office or his subsequent retirement." Federal Def's Sur-Response to Pl's Motion to Compel Discovery, p.3 (dated March 10, 2003). GAO states that Diersen's administrative complaint identified his claims as being based upon events in 1997. GAO claims that Diersen's administrative complaint was properly confined to events occurring in the 45-day period before his

---

[5] GAO has in fact produced GAO Performance Expectations of Senior Executive Service Members for 1997.

retirement on September 30, 1997. GAO states that Diersen's complaint in this lawsuit has improperly transformed his claim into a whole-scale attack upon GAO's EEO and affirmative action policies dating back to the 1980's. GAO argues that on the basis of this new claim, Diersen has claimed entitlement to "all sorts of information that may have anything to do with GAO's EEO or affirmative action plans." Id., p. 4. GAO contends that in expanding his claim, Diersen has violated the principle that a Title VII plaintiff may only bring those claims which fall within the scope of his original EEO charge. GAO further contends that Diersen cannot rely on the continuing violation doctrine to reach back from his 1997 EEO complaint to events occurring in the 1980s. GAO concludes that the relevance of the destroyed information cannot be determined until the court determines whether or not Diersen's current claims have been properly and timely presented, exhausted, and preserved for litigation in the current lawsuit.

The Court disagrees with GAO's argument that it cannot determine whether GAO had a duty to preserve the missing documents until the scope of Diersen's complaint is determined. A complaint provides notice to a party of what information is relevant and likely to be sought in discovery. Cohn, 1995 WL 519968 at * 5. A party cannot destroy documents based solely on its own version of the proper scope of the complaint. GAO has not obtained a judicial ruling that the complaint in this matter should be limited to events occurring in 1997. Absent such a ruling, GAO had a duty to preserve evidence relevant to the claims in Diersen's complaints. Given the extremely broad and extensive allegations contained in Diersen's various complaints, the Court is not convinced that GAO did not have a duty to preserve the destroyed pre-1997 performance expectations memoranda and Totten and Luke performance appraisals.

GAO has admitted that it has no documents concerning the identification or retention of documents concerning the claims made in this lawsuit. Def's Resp. in Compliance with April 25, 2003 Magistrate's Order, p. 4. Moreover, GAO has not provided any evidence indicating that it instructed any employees to preserve documents relevant to this litigation. GAO's apparent failure to warn its employees to preserve documents potentially relevant to this litigation evidences fault by acting with negligence or flagrant disregard of the duty to preserve potentially relevant evidence.

Although the Court has found that GAO failed to preserve certain potentially relevant evidence, the Court is not persuaded that any of the sanctions sought by Diersen are appropriate. Given the current record, the Court finds that the destruction of the pre-1997 performance expectations memoranda and the Totten and Luke performance appraisals does not raise an inference of bad faith or wilfulness. Diersen has not also established that the degree of prejudice, if any, from non-production of the Totten and Luke performance appraisals and the pre-1997 expectations memoranda is great enough to warrant sanctions.

Diersen claims that the destroyed documents were "crucial" to his ability to prove his claims because the destroyed documents "evidenced the quotas it gave Diersen's superiors to hire and promote minorities and females as well as documents that evidenced the actions that Diersen's supervisors took to meet those quotas." Diersen's motion, p. 12.[6] The Court emphasizes that the only missing documents are: 1) pre-1997 performance expectations for SES Members; 2) performance appraisals for Totten who retired approximately fifteen years ago; and 3) pre-1997

---

[6] Diersen has not indicated his definition of a "quota." The Court assumes he means a fixed number or percentage which must be met regardless of the quality of the applicants.

performance appraisals for Luke.[7] Diersen has failed to sufficiently explain how he is prejudiced by the non-production of these documents.

The Court has reviewed the available performance expectations memoranda for fiscal years 1997, 1998, and 2000. Notably, none of these memoranda contain any specific numeric expectations or goals regarding minority and/or female hiring and promotions. Defendant's Response to Plaintiff's Motion to Compel Discovery, Exh. 5. In fact, each memorandum reviewed by the Court

---

[7] GAO has also indicated that certain records from GAO's Office of Opportunity and Inclusiveness were destroyed in 1997. GAO presented the Declaration of Allen R. Elliott, the Deputy Director of GAO's Office of Affirmative Action Plans between 1986 and 1994. Elliott states that the GAO's Office of Affirmative Action Plans was disestablished in early 1994. Elliott further states that to the best of his knowledge and belief, pursuant to GAO Order 04131.1, GAO Comprehensive Records Schedule (June 30, 1998), files consisting of overall EEO/Affirmative Action/Civil Rights guidance and program administration records, including correspondence, reports, memoranda, and other records pertaining to overall program office administration, policies and procedures were destroyed three years after closure. Elliott concludes that records of GAO's Office of Affirmative Action Plans are not officially available. Nevertheless, Elliott retained personal copies of correspondence and related reports, dated between 1986 and 1993, which communicated affirmative action job assignment, hiring, and promotion processes to and from GAO field offices and units. Diersen has been provided with this information.

Diersen has not shown that any material from the Office of Affirmative Actions Plans was destroyed for the purpose of hiding adverse information in this lawsuit. GAO represents that at the time Diersen filed his administrative complaint of discrimination with GAO on September 30, 1997, the records from the Office of Affirmative Action Plans were already destroyed or in the process of being destroyed pursuant to GAO regulation. Based on Diersen's complaint of discrimination dated September 30, 1997, GAO perceived Diersen's claim as alleging discrimination based on race, sex, and age when he was appraised, not assigned to an OSI assignment, and forced to take early retirement. Diersen has not convinced this Court that this allegation put GAO on notice that it needed to preserve records pertaining to affirmative action goals dating back to 1980. Diersen also claims that records from the Office of Affirmative Action Plans should have been preserved in light of the Chennarreddy litigation filed in 1987 in the district court for the District of Columbia. Diersen has not provided the Court with any pleadings or rulings of the trial judge which would allow this Court to determine the nature of the issues in that case and whether records from the Office of Affirmative Action Plans should have been preserved by GAO for that lawsuit. The Court does not find the Declaration of Walter T. Charlton, the plaintiffs' lawyer in Chennarreddy, persuasive on the issue of the scope and nature of that litigation.

explicitly states that SES members are expected to adhere to equal opportunity and merit system principles in making decisions regarding hiring, promoting, training, and rewarding staff.

With respect to performance appraisals for SES Members, GAO states that to the best of its knowledge and belief, SES performance appraisals did not contain specific, quantifiable expectations regarding affirmative action, equal employment opportunity and diversity and did not include information about targets, goals, or quotas. The Court's review of existing performance appraisals confirms GAO's assertion. GAO has produced performance appraisals which are similar to the missing performance appraisals. Diersen has Aronovitz's performance appraisals for the rating periods of 1992-1993, 1995-1996, 1996-1997, 1997-1998, 1999-2000, and 2000-2001 and Luke's performance appraisals for the rating periods of 1997-1998 and 1998-1999. A review of the produced SES performance appraisals shows that some appraisals contain minority hiring information but not specific numeric hiring expectations. See Aronovitz appraisal, Rating period 10/01/98-9/30/99 (stating "[s]uccessful hiring included ... an Asian staff member with extraordinary credentials in the health field."); Aronovitz appraisal, Rating period 10/1/99-9/30/00 (stating "[s]uccessful hiring included ... an African-American staff member with extraordinary credentials in public policy research.").

Diersen has also not shown that the destroyed performance appraisals contained any crucial or irreplaceable information. To the extent that Diersen seeks to use this type of hiring information to claim generally that GAO maintained minority and female hiring goals, he has not explained why existing performance appraisals are not sufficient. If Diersen seeks to use minority and female hiring information to support a claim that he was unlawfully denied a specific position which he sought, then Diersen likely has some personal knowledge of the race or sex of the successful applicant(s).

This is not a case where the destroyed evidence is the only proof available on an issue in the case. See e.g., Marrocco, 966 F.2d at 225 (finding loss of tire's side ring prevented plaintiffs from establishing prima facie case of negligent manufacturing). Diersen has admitted that GAO provided him with numeric information on GAO's hiring and promoting of minorities and females between 1987 and 1990 for GAO's Chicago office. Diersen Reply, p. 8. Diersen further admits that GAO provided him with some memoranda that disclose some of the actions Totten took to meet GAO's affirmative action goals for its Chicago office. Id. Moreover, the loss of certain evidence of minority/female hirings contained in the performance appraisals is not irreplaceable because Totten and Luke are available to testify generally concerning GAO's affirmative action goals and expectations for SES members.

Diersen's claim that the destroyed documents were "crucial" to his ability to prove his claims is further undermined by his own prior statements concerning the existence of other evidence which he believes supports his claims of illegal quotas. In his original complaint, Diersen represented that "[in] a series of official documents and testimony before Congress and in statistics stipulated in related litigation, GAO had admitted and it has been proven that GAO is biased in favor of young persons, women, and minorities and that these groups have been during the relevant period, recipients of benefits resulting from GAO's affirmative action programs." Cmplt., p. 28. Diersen further stated: "GAO has admitted by memoranda and on the public record in testimony before Congress that, in making effective the necessary RIF, it intended to favor persons subject to GAO's mandatory quota driven Affirmative Action Plans ...." Id., pp. 29-30. Diersen also represented that "GAO has admitted these illegal and improper preferences as alleged herein." Id., p. 30.

-13-

Moreover, GAO has produced numerous other documents regarding GAO's affirmative action goals. For example, GAO provided Diersen with its office-wide affirmative action plans from fiscal years 1992-1997. GAO informed Diersen that it was not aware of the existence of any other affirmative action plans, that it had operated for several years prior to 1992 without any affirmative action plans at all, and that is has operated since 1997 without any such plan. GAO further provided Diersen with a 1996 EPRP GAO-wide Summary, a 1997 EPRP Summary, and a report entitled Spring 2000 MSP Cycle Results which is a FY 2001 statistical report concerning the age, race and gender of employees vis-a-vis their performance appraisals. GAO gave Diersen memoranda entitled GAO Performance Expectations of Senior Executive Service ("SES") Members dating from 1997 through the present. Finally, with respect to specific performance appraisals, GAO gave Diersen Aronovitz's performance appraisals for the rating periods of 1992-1993, 1995-1996, 1996-1997, 1997-1998, 1999-2000, and 2000-2001 and Luke's performance appraisals for the rating periods of 1997-1998 and 1998-1999.

Diersen also argues that he is entitled to an inference that the documents destroyed by GAO in this case would have provided evidence unfavorable to GAO. "An employer's destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case." Park v. City of Chicago, 297 F.3d 606, 615 (7th Cir. 2002). Rather, the destruction of evidence presumption has two elements: (1) the totality of the circumstances must show that the destruction was in bad faith and (2) if prong (1) is met the court "may . . . infer from this state of mind that the contents of the evidence would be unfavorable to the party if introduced in court." S.C. Johnson & Son, Inc. v. Louisville & Nashville Railroad Co., 695 F.2d 253, 258 (7th Cir. 1983). "The crucial element is not

that the evidence was destroyed but rather the reason for the destruction." Id.

Although GAO failed to preserve certain limited documents, the facts surrounding their destruction do not support an inference that the destroyed documents would have been unfavorable to GAO. The Court notes the absence of any evidence indicating that GAO discarded the documents in bad faith for the purpose of hiding discriminatory information. No inference that the documents destroyed by GAO would have favored Diersen is appropriate because the evidence established that the records were destroyed in the ordinary course of business. Absent evidence of bad faith destruction, the Court will not presume that the content of the destroyed documents was unfavorable to GAO. S.C. Johnson & Son, Inc., 695 F.2d at 658-59 (7th Cir. 1982). Finally, there is no indication here that GAO selectively destroyed documents or violated a record retention policy in destroying the documents. Brown & Williamson Tobacco Corp. v. Jacobson & CBS, 827 F.2d 1119, 1134-36 (7th Cir. 1987) (applying presumption where employee engaged in selective destruction of documents he knew were relevant to the litigation against defendant, where employee violated employer's retention policy, and where he offered noncredible justification for destruction); Latimore v. Citibank Federal Savings Bank, 151 F.3d 712, 716 (stating rebuttable presumption of bad faith destruction of evidence arises where party violated record retention regulation and refusing to apply presumption where party creditably "showed that the disappearance of [the documents] was inadvertent.").

## CONCLUSION

For the reasons stated above, the Court concludes that none of sanctions sought by Diersen, including default, evidence preclusion, and adverse inferences, are warranted here. Plaintiff's Motion for Sanctions for Spoliation of Relevant Documents should be denied. Any objections to this

Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. <u>Lorentzen v. Anderson Pest Control</u>, 64 F.3d 327, 330 (7th Cir. 1995).

**E N T E R:**

*[signature: Nan R. Nolan]*

**Nan R. Nolan**
**United States Magistrate Judge**

Dated: 6-5-03