55-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2437 | **DATE** | 11/3/2003 |
| **CASE TITLE** | Diersen vs. Hinchman | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted. Status hearing set for 11/10/03 and Jury Trial set for 12/8/03 are stricken. Any other pending dates are stricken. Defendant's motion to strike plaintiff's statement of material facts and plaintiff's response to defendant's statement of material facts is denied as moot.

*Amy J St E*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 4 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 129 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH✓ | courtroom deputy's initials | 03 NOV -3 PM 4:26 FILED - IN DOCKETING | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID JOHN DIERSEN,               )
                                  )
            Plaintiff,            )
                                  )     No. 00 C 2437
      v.                          )
                                  )
DAVID M. WALKER, Comptroller General )
of the United States of America,  )
                                  )
            Defendant.            )

DOCKETED

NOV - 4 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

*Pro se* Plaintiff David John Diersen ("Diersen") brought this employment discrimination

action against the United States Comptroller General David M. Walker of the General

Accounting Office ("GAO"). Diersen's complaint alleges that GAO discriminated against him

on the basis of age in violation of the Age Discrimination Act of 1967, 29 U.S.C. §§ 621-34, *et*

*seq.* ("ADEA") (Count I), and on the basis of race and sex in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") (Count II). Diersen further alleges

that GAO retaliated against him for filing a discrimination complaint with the Equal

Employment Opportunity Commission ("EEOC") (Count III). GAO has moved for summary

judgment on all three counts. For the following reasons, GAO's motion is granted.

### LEGAL STANDARDS

**I.    Summary Judgment**

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.,* 282 F .3d 467, 471 (7th Cir. 2002).

## II.     Local Rule 56.1(b)

The Court first addresses Diersen's failure to comply with the requirements of Local Rule 56.1, which governs summary judgment briefing in the Northern District of Illinois.[1] L.R. 56.1. Local Rule 56.1(a)(3) requires the moving party to provide a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). The opposing party must then file "a concise response to the movant's statement" that includes, *inter alia*, "a response to each numbered

_____

[1] Local Rule 56.2 requires a defendant who files a motion for summary judgment against a *pro se* plaintiff to provide the *pro se* plaintiff with a plainly worded notice explaining a summary judgment motion, local rules governing such motions, and the consequences if the plaintiff fails to respond to the motion. L.R. 56.2. GAO served and filed the required notice. (R. 113-1.)

paragraph in the moving party's statement." L.R. 56.1(b)(3)(A). In its response the non-moving

party must "admit or deny each factual statement proffered by the defendant in a summary

judgment motion, and designate with specificity and particularity those material facts believed to

establish a genuine dispute for trial." *Greer v. Board of Educ. of the City of Chicago,* 267 F.3d

723, 727 (7th Cir. 2001).

Diersen has failed to comply with Local Rule 56.1(b). In his "Response to Defendant's

Statement of Material Facts" (R. 122-1), Diersen fails to properly identify which facts he

disputes. The statements in Diersen's response include impermissible argument, conclusory

statements, duplicative responses to separate paragraphs, and additional, nonresponsive

information that belongs, if anywhere, in a separate statement of additional material facts

pursuant to Local Rule 56.1(b)(3)(B). Far from filing a "concise response" as required by Local

Rule 56.1(b), Diersen filed rambling, argumentative statements that lack specificity. Local Rule

56.1 statements that are full of argument, evasion, and improper denials defeat the point of Local

Rule 56.1, which is to identify precisely which facts are actually in dispute. *Bordelon v. Chicago*

*Sch. Reform Bd. of Trs.,* 233 F.3d 524, 528 (7th Cir. 2000). Despite Diersen's failure to comply

with Local Rule 56.1, the Court considered each paragraph of Diersen's response and did not

find any disputes with GAO over any genuine issues of material fact.[2]

---

[2] Diersen explicitly states that he does not dispute GAO statements of fact ¶¶ 1, 3-16, 19-20, 37-
38, 49, and 54. (R. 122-1, Pl.'s Resp. to Def.'s Statement of Material Facts, at 20-22.) Diersen
fails to dispute GAO statements of fact ¶¶ 22-36, 41, 43-48, 50-53, 55, in that he responds with
argumentative, conclusory statements, and additional, non-responsive information, and fails to
provide sufficient evidence of a genuine dispute. Accordingly, the Court deems these facts
admitted. *See Oates v. Discovery Zone,* 116 F.3d 1161, 1167 (7th Cir. 1997). To the extent that
Diersen disputes GAO statements of fact ¶¶ 2, 17, 18, 21, 39, 40, 42, these facts are not material.

Diersen also submitted a document entitled "Affidavit and Statement of Additional Material Facts," (R. 121-1) in which Diersen impermissibly combined his statement of additional facts with his own supporting affidavit in contravention of the Local Rule. Rather than submitting a statement of additional facts with citations to a supporting affidavit, Diersen combined his statement of additional facts with his affidavit, such that his statement of additional facts essentially *becomes* his affidavit. Moreover, this document, like his Response to GAO's Statement of Facts, is rambling and argumentative.

Although courts should be "solicitous of *pro se* plaintiffs" when assessing their compliance with procedural requirements, *Kincaid v. Vail,* 969 F.2d 594, 598-99 (7th Cir. 1992), *pro se* litigants must nevertheless support and develop their arguments with legal authority. *Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir. 2001). Accordingly, the Court deems admitted those facts set forth in GAO's 56.1(a) statement that Diersen fails to properly dispute and that are supported by evidence. *See* L.R. 56.1(b)(3)(B).

Diersen's failure to dispute any of GAO's material facts, however, does not result in an automatic grant of summary judgment in GAO's favor. The Court still must evaluate all facts in the light most favorable to Diersen, the non-moving party. *O'Donnell v. City of Chicago*, No. 02 C 1847, 2003 WL 22339285, at *1 (N.D. Ill. Oct. 14, 2003).

## UNDISPUTED FACTS

Between January 27, 1980 and September 30, 1997, GAO employed Diersen, a white male born on September 29, 1948. (R. 112-1, Def.'s Rule 56.1(a)(3) Statement of Material Facts ("Def.'s Statement") ¶ 3; R. 122-1, Pl.'s Resp. to Def.'s Statement of Material Facts ("Pl.'s Resp.") ¶ 3.) GAO assigned Diersen to its Financial Institutions and Markets Issue ("FIMI")

Area Core Group in the Chicago Field Office in January 1990 as a "Band II" Senior Evaluator. (R. 112-1, Def.'s Statement ¶ 4; R. 122-1, Pl.'s Resp. ¶ 4.) Diersen took early retirement on September 30, 1997. (*Id.*)

## I.    GAO Structure and Personnel

GAO is a federal agency headquartered in Washington, D.C. (R. 112-1, Def.'s Statement ¶ 5; R. 122-1, Pl.'s Resp. ¶ 5.) In 1989, GAO instituted "Bands" by combining its GS-7, 9, 11, and 12 Analyst positions into Band I; its GS-13 and 14 Analyst positions into Band II; and its GS-15 Analyst positions into Band III. (R. 112-1, Def.'s Statement ¶ 12; R. 122-1, Pl.'s Resp. ¶ 12.) Also in 1989, GAO instituted Pay-for-Performance ("PFP") rankings whereby it based an Analyst's pay increases and bonuses primarily on his or her performance appraisals. (R. 112-1, Def.'s Statement ¶ 13; R. 122-1, Pl.'s Resp. ¶ 13.) In the mid-1990s, GAO incurred budget reductions and offered voluntary early retirement to staff as one method of managing its budget reductions. (R. 112-1, Def.'s Statement ¶ 14; R. 122-1, Pl.'s Resp. ¶ 14.)

In September 1997, the FIMI Area Core Group consisted of eight employees: the Assistant Director, five Band II Evaluators and two Band I evaluators. (R. 112-1, Def.'s Statement ¶ 15; R. 122-1, Pl.'s Resp. ¶ 15.) The five Band II Evaluators were male. (R. 112-1, Def.'s Statement ¶ 16; R. 122-1, Pl.'s Resp. ¶ 16.) Two were in their fifties, two were in their forties (including Diersen), and one was in his thirties. (*Id.*) The two Band I Evaluators were both female, one in her thirties and one in her twenties. (*Id.*)

Cecile Trop, a white female born on December 3, 1949, was the Assistant Director (Band III) of the FIMI Area Core Group and served as Diersen's direct supervisor from 1993 until his early retirement on September 30, 1997. (R. 112-1, Def.'s Statement ¶ 9; R. 122-1, Pl.'s Resp. ¶

9.) Leslie Aronovitz, a white female born on January 13, 1952, served as the Manager of the Chicago Field Office beginning in 1995. (R. 112-1, Def.'s Statement ¶ 10; R. 122-1, Pl.'s Resp. ¶ 10.) Stewart Herman, a white male born on February 16, 1942, was the Deputy Manager (Band III) of the Chicago Field Office. (R. 112-1, Def.'s Statement ¶ 11; R. 122-1, Pl.'s Resp. ¶ 11.)

## II.     Diersen's Performance Appraisals

From 1994-97, Band I and II employees were rated in seven different performance areas,[3] and could receive one of the following six performance ratings in each of those areas: Outstanding, Exceeds Fully Successful, Fully Successful, Needs Improvement, Unacceptable, and No Basis for Evaluation. (R. 112-1, Def.'s Statement ¶ 17; R. 122-1, Pl.'s Resp. ¶ 17.) In the course of the 1995-97 performance ratings, each year one or more FIMI staff members were assessed as Fully Successful in one or more performance areas.[4] (R. 112-1, Def.'s Statement ¶ 23.)

In Diersen's 1995 annual performance evaluation, Trop rated Diersen as Outstanding in four performance areas and as Exceeds Fully Successful in three areas. (R. 112-1, Def.'s Statement ¶ 19; R. 122-1, Pl.'s Resp. ¶ 19.) In 1996, Trop rated Diersen as Outstanding in four performance areas, as Exceeds Fully Successful in two areas, and as Fully Successful in one area. (R. 112-1, Def.'s Statement ¶ 20; R. 122-1, Pl.'s Resp. ¶ 20.)

---

[3] Diersen disagrees with the labels with which GAO identifies the seven different performance areas. (R. 112-1, Def.'s Statement ¶ 17; R. 122-1, Pl.'s Resp. ¶ 17.) However, this is immaterial.

[4] Diersen disputes GAO's statement that marks below "Fully Successful" denote serious performance problems, and asserts that, due to mark inflation, marks including "Fully Successful" denote serious performance problems. (R. 112-1, Def.'s Statement ¶ 18; R. 122-1, Pl.'s Resp. ¶ 18.) This disputed fact is immaterial.

In 1997, Trop rated Diersen as Outstanding in two performance areas,[5] as Exceeds Fully Successful in three areas, and as Fully Successful in two areas. (R. 112-1, Def.'s Statement ¶ 21; R. 122-1, Pl.'s Resp. ¶ 21.) In connection with Diersen's 1997 performance evaluation, Trop noted that Diersen had been under significant stress throughout the 1997 review period, which appeared to affect his relationship with his core-group members. (R. 112-1, Def.'s Statement ¶ 22.) Trop noted that in the past year, Diersen had represented himself in four separate legal disputes, had undergone surgery, had completed a master's degree, and was dealing with a staff member with performance problems. (*Id.*) Over the final five months of the 1997 review period, virtually all of the work Diersen submitted to Trop needed substantial revision. (*Id.*)

## III.    Diersen's Request for Reassignment

In September 1997, Diersen asked Herman and Aronowitz for a reassignment to the Chicago Field Office's Office of Special Investigations ("OSI") because he could no longer work with Trop. (R. 112-1, Def.'s Statement ¶ 24.) Diersen told Thomas McCool, the FIMI director at Washington, D.C. headquarters, that he would take early retirement if GAO did not reassign him to OSI. (*Id.* at ¶ 27.) OSI headquarters rejected Diersen's request for a reassignment to OSI. (*Id.* at ¶ 25.)

At the time Diersen made his request, the Chicago office had only one full-time employee working in the OSI group, Robert Lippencott. (R. 112-1, Def.'s Statement ¶ 28.) The office did not have enough work to support Lippencott's position, and that position never had a vacancy. (*Id.* at ¶¶ 28-30.) GAO did not have a current or foreseeable future need for additional OSI

---

[5] Diersen disputes GAO's statement identifying the two particular performance categories in which Trop rated Diersen as "Outstanding" in 1997. (R. 112-1, Def.'s Statement ¶ 21; R. 122-1, Pl.'s Resp. ¶ 21.) This disputed fact is immaterial.

personnel resources in Chicago. (*Id.* at ¶ 28.) GAO never contemplated the option of a second person working in OSI in Chicago. (*Id.* at ¶ 29.) Furthermore, GAO could not justify the option of a second person working in OSI in Chicago. (*Id.*)

Herman and Aronovitz met with Diersen on September 18, 1997 and informed him that GAO could not assign additional resources to OSI because of the uncertain workload, but that GAO would consider him for reassignment to other core groups. (R. 112-1, Def.'s Statement ¶¶ 30-31.) Aronovitz assessed that Diersen might be more comfortable in the Tax Issue Area core group but she could not yet disclose the fact that GAO was about to dissolve the tax core group. (*Id.* at ¶ 29.) Diersen responded that he did not have much respect for the managers in other core groups and that, if they did not reassign him to OSI, he would take early retirement. (*Id.* at ¶¶ 29-30.) At one point, Diersen told Herman that if he did not get the OSI assignment, he would retire and file an EEO complaint. (*Id.* at ¶ 30.)

## IV. Diersen's EEO Complaint

Diersen contacted his EEO counselor on September 19, 1997 to complain that, due to his race (white), sex (male), and age (49), he received low job performance rankings, he did not receive an OSI job assignment, and he was harassed to such an extent that he was forced to take early retirement. (R. 112-1, Def.'s Statement ¶ 34.) The EEO counselor formulated the issue for Diersen and arranged for a counseling interview. (*Id.*) Diersen met with the EEO counselor for a final counseling interview on September 26, 1997. (*Id.* at ¶ 35.)

Four days later, on September 30, 1997, Diersen took early retirement at 49 years of age. (R. 112-1, Def.'s Statement ¶ 36.) Diersen's superiors informed him before he elected early

retirement that he could transfer to another area as an alternative to early retirement.[6] (R. 112-1, Def.'s Statement ¶¶ 30, 32; R. 37-1, Pl.'s Fifth Am. Compl. ("Compl.") ¶ 37.) He was the only staff member in Chicago who elected early retirement in September 1997. (R. 112-1, Def.'s Statement ¶ 37; R. 122-1, Pl.'s Resp. ¶ 37.)

The same day Diersen took early retirement, he also filed a formal EEO complaint. (R. 112-1, Def.'s Statement ¶ 36.) Based on Diersen's formal EEO complaint, GAO accepted for investigation the following allegations: based upon his race, sex, and age, Diersen received a low performance ranking from Trop in 1997, had to stay in the FIMI group rather than transfer to the OSI group, and was harassed to the point of being forced to take early retirement.[7] (*Id.* at ¶¶ 43, 46.)

On October 1, 1997, Diersen learned that GAO had withheld information that it had abolished the Tax Issue Area core group. (R. 112-1, Def.'s Statement ¶ 44.) Diersen deemed this information relevant to his decision to take early retirement. (*Id.*) The next day, however, after the EEO counselor indicated that he could make arrangements for Diersen to rescind his early retirement, Diersen declined the offer and opted to proceed with his EEO complaint. (*Id.*)

---

[6] Diersen does not dispute that his superiors informed him that a transfer to another area was a possibility, but argues that GAO never *actually* offered him another position. (R. 122-1, Pl.'s Resp. ¶ 32.) Further, Diersen considered any potential transfer offered by his superiors to be "adverse." (R. 37-1, Compl. ¶ 37.)

[7] Diersen disputes that his formal EEO complaint was limited to those allegations, and asserts that the "primary adverse employment action that Diersen cited in his EEO complaint was that Trop gave him two alternatives if he did not retire by September 30, 1997 – accept an adverse transfer or constructive demotion." (R. 122-1, Pl.'s Resp. ¶ 43.) Diersen does not dispute, however, that GAO notified him that if he disagreed with GAO's description of his allegations he had to notify GAO within ten days. (R. 112-1, Def.'s Statement ¶ 46.) It is undisputed that Diersen did not notify GAO. (*Id.*)

GAO's civil rights office investigated Diersen's formal complaint and summarized the results in a lengthy 80-page memorandum. (R. 112-1, Def.'s Statement ¶¶ 47-48.) The EEO investigator concluded that Diersen had failed to establish any of his claims of discrimination or retaliation. (*Id.* at ¶ 50.) On April 29, 1998, GAO issued its final agency decision denying Diersen's formal EEO complaint. (R. 112-1, Def.'s Statement ¶ 52; R. 37-1, Compl. ¶ 43.) GAO denied Diersen's formal EEO complaint because, *inter alia*, the 1997 performance evaluation ratings of Fully Successful were justified, the Chicago OSI had only one employee and did not have enough work to justify any additional OSI employees, and Diersen had no evidence of harassment that would have pressured him into early retirement. (R. 112-1, Def.'s Statement ¶ 53.)

Aronovitz provided Diersen with three letters of recommendation after he retired. (R. 112-1, Def.'s Statement ¶ 40; R. 122-1, Pl.'s Resp. ¶ 40.) Aronovitz believed that the letters were "very good."[8] (R. 112-1, Def.'s Statement ¶ 40.)

On July 30, 1998, Diersen filed his three-count complaint. (R. 112-1, Def.'s Statement ¶ 55; R. 37-1, Compl. ¶ 46.)

## ANALYSIS

### I. The Court's Review is Limited to the Claims Exhausted in Diersen's Administrative EEO Complaint

Federal employees who initiate Title VII claims must exhaust their administrative remedies before they may assert their claims in a lawsuit. *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001). An employee may pursue a lawsuit including the claims that were explicitly

---

[8] Diersen disagrees that the letters were "very good," and argues that "[i]n relative terms, none of those letters were strong." (R. 122-1, Pl.'s Resp. ¶ 40.)

included in his EEO complaint, and all claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute, and of giving the employer some warning of the conduct about which the employee complains. *Id.*

GAO contends that the only discrimination claims Diersen properly exhausted are his claims of age, race, and sex discrimination with respect to his lower-than-expected 1997 performance evaluation, the denial of his request for reassignment to OSI, and his being forced to take an early retirement. (R. 125-1, Def.'s Reply Brief in Supp. of Mot. for Summ. J. at 1 n.1.) GAO contends that the only retaliation claim Diersen properly exhausted is his claim that GAO failed to write sufficiently positive letters of recommendation for Diersen after he retired. (*Id.* at 14.) GAO argues that Diersen failed to exhaust all other claims, which are accordingly not reviewable. GAO identifies Diersen's non-exhausted claims as his disparate impact claim, his pre-1997 retaliation claim, and some of his reverse discrimination claims.[9] The Court agrees with GAO.

It is undisputed that GAO accepted for investigation Diersen's allegations that Diersen was discriminated against on the basis of his age, race, and sex, when he (1) received a lower-

---

[9] In addition to the three counts in his complaint, Diersen confusingly set forth six "Causes of Action": Preferential Treatment Resulted in Disparate Treatment and Reverse Discrimination (first cause of action); Facially Neutral Policies and Practices Had Disparate Impact (second cause of action); Prima Facie Case of Age Discrimination, Reverse Discrimination, and Retaliation (third cause of action); Retaliation for Opposition and Participation Between 1980 and 1997 (fourth cause of action); Constructive Discharge in September of 1997 for Opposition and Participation (fifth cause of action); and Retaliation After September of 1997 for Filing Administrative Discrimination Complaint, Contacting Elected Officials, Filing This Suit, and Posting Claims on the Internet (sixth cause of action). (R. 37-1, Compl. ¶¶ 49-79.)

than-expected performance evaluation; (2) did not receive a job reassignment that he had requested; and (3) was forced by these events to take early retirement.[10]  These allegations encompassed the full scope of Diersen's EEO complaint.

### A.  Disparate Impact Claim

It is undisputed that Diersen did not raise a claim of disparate impact in his administrative EEO action.  Diersen asserts that he nonetheless should be allowed to raise a disparate impact claim in this Court because it is "reasonably related" to the discrimination claims he raised in his EEO action.  Diersen's disparate impact claim appears in his second cause of action.

There must be a reasonable relationship between the allegations in the charge and the claims in the complaint, and it must appear that the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000).  Claims are "reasonably related" if there is a factual relationship between them. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001).  At minimum, the EEOC charge and the complaint must describe the same conduct and implicate the same individuals. *Cheek*, 31 F.3d at 501.

A claim of disparate impact differs substantially from a claim of disparate treatment.  A claim of disparate treatment focuses on the employer's intent with respect to a particular employee's age, race, gender, or disability, whereas a claim of disparate impact focuses on whether an employer's particular employment practice has a disproportionately negative effect on members of the employee's protected class as a whole. *Noreuil v. Peabody Coal Co.*, 96 F.3d

---

[10]  Diersen cannot now argue that he disagrees with GAO's description of his allegations because it is undisputed that Diersen failed to notify GAO of this disagreement within ten days of October 17, 1997.

254, 258 (7th Cir. 1996).

Diersen's disparate impact claim implicates different conduct and different individuals than the discrimination claim he raised in his EEO charge. In his EEO charge Diersen alleged that three specific GAO supervisors (Aronovitz, Herman, and Trop) discriminated against him in his 1997 performance evaluation, his request for reassignment, and his decision to take early retirement. His disparate impact claim implicates different conduct (decades of nation-wide affirmative action policies that were carried out since 1981) and different individuals (several U.S. Comptrollers General who acted at the urging of "the Democratic Party and many Democratic Chairmen and Ranking Members," and "all of GAO's employees since 1980 " who were involved in hiring, firing, and pay and promotion decisions). (R. 37-1, Compl. ¶¶ 20, 21, 51; R. 120-1, Pl.'s Mem. in Supp. of its Opp. to Summ. J. at 4.) Because it is not reasonably related to any of the claims raised in his EEO charge, Diersen's disparate impact cause of action is not reviewable in this lawsuit.

### B. Pre-1997 Retaliation Claim

An employee must include in his initial EEO charge all acts of retaliation occurring up to that point. *Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000). A complaint that charges discrimination does not place the employer on notice of a retaliation charge. *Noreuil*, 96 F.3d at 258. Diersen raises a claim of pre-1997 retaliation in his fourth cause of action, fifth cause of action, parts of his third cause of action, and most of his retaliation claim (Count III). It is undisputed that Diersen did not include claims of pre-1997 retaliation in his EEO charge. Accordingly, he cannot pursue those claims in this Court.

13

## C.    Reverse Discrimination Claim

A federal employee must bring any discrimination complaint to the attention of an EEO counselor within forty-five days of the alleged discriminatory action. 29 C.F.R. § 1614.105(a). A complainant must then file a formal EEO complaint within fifteen days of the EEO counselor's final interview with the employee. 29 C.F.R. § 1613.214(a)(1)(ii). Diersen first visited an EEO counselor on September 19, 1997.

GAO contends that Diersen is not entitled to redress for events that occurred 45 days before September 19, 1997 and that were not mentioned in Diersen's September 30, 1997 formal EEO complaint. Specifically, GAO contends that Diersen cannot base his reverse discrimination claim on the following alleged GAO actions: GAO encouraged his supervisors and co-workers to make derogatory remarks about him; delayed his pay increases; discouraged him from applying for additional promotions; denied him leadership roles; denied him audits in which he could contribute most to GAO; gave him an assignment to supervise a problem employee in 1987 and another problem employee in 1995; gave him unrealistic performance expectations and unfair performance appraisals and pay-for-performance rankings; gave him no bonuses and either no or smaller pay increases; and paid him less than similarly or less qualified minorities and females.[11] (R. 111-1, Def.'s Mem. in Supp. its Mot. for Summ. J. at 5.)

It is undisputed that none of these alleged GAO actions took place within 45 days of Diersen's initial contact with an EEO counselor. Diersen invokes the "continuing violation" doctrine to argue that he nonetheless should be allowed to present those claims to the Court.

---

[11]  GAO does not contend that Diersen's entire reverse discrimination claim is not reviewable and acknowledges that Diersen properly exhausted part of his Count II reverse discrimination claim.

Under the "continuing violation" doctrine, an employee may obtain relief for a time-barred act by linking it with an act that is within the limitations period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). An employee can invoke the doctrine where an employer has practiced covert discrimination over a period of time and the acts of covert discrimination are closely related to each other. *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663-664 (7th Cir. 1994).

The acts Diersen complains of were not covert. It is undisputed that Diersen has complained about discrimination against older white males since the 1980s, and that he has challenged GAO's affirmative action policies as discriminatory since 1987 when he joined the class action lawsuit. (R. 37-1, Compl. ¶ 33.) Diersen cannot obtain the benefit of the continuing violation doctrine under a theory of covert discrimination.

Because Diersen failed to properly exhaust the aforementioned claims, the Court's review is limited to Diersen's discrimination claims based on his 1997 performance evaluation, the denial of his request for reassignment to OSI, and his being forced to take an early retirement, and his retaliation claim based on GAO's alleged failure to write sufficiently positive letters of recommendation for Diersen after he retired.

## II. Diersen Cannot Show That GAO Discriminated Against Him

In Count I, Diersen asserts that GAO discriminated against him on the basis of his age (49) in violation of the ADEA. The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To establish an ADEA violation, a plaintiff must present evidence demonstrating that age was a "determining factor" in an adverse employment action. *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 434 (7th Cir. 1992).

In Count II, Diersen asserts that GAO discriminated against him on the basis of his color (white) and his sex (male). This is a reverse discrimination claim. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Diersen may show evidence of discrimination either by means of direct evidence or the indirect burden-shifting method of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692-693 (7th Cir. 2000). Because Diersen presents no direct evidence that his age, race, or sex was a determining factor in any adverse employment action, he must proceed under the *McDonnell Douglas* burden-shifting model.

Under the *McDonnell Douglas* burden-shifting model, a plaintiff must first establish a *prima facie* case of discrimination. To make a *prima facie* case of discrimination, the plaintiff must show that (1) he is a member of a protected class, (2) he reasonably performed to his employer's expectations, (3) he was subject to an adverse employment action, and (4) he was treated differently from similarly situated employees who were outside of his protected group. *See McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. 1817. In the reverse discrimination context, the first prong is modified such that the plaintiff must prove that "background circumstances" exist that support an inference that the employer is one of those unusual employers who discriminates against the majority. *See Mills v. Health Care Serv. Corp .,* 171 F.3d 450, 456-57 (7th Cir.1999); *Piskorek v. Illinois Dept. of Human Servs.*, No. 01 C 0496, 2003 WL 21212583, at

*4-5 (N.D. Ill. May 22, 2003).

Once the employee makes a *prima facie* showing of discrimination, the employer may come forward with evidence of a "legitimate, nondiscriminatory reason" for its employment decision. If the employer articulates a non-discriminatory reason for its conduct, the employee must prove that the legitimate reason proffered by the employer was merely a pretext for discrimination, and that discrimination was the real reason for the employment decision. *Baron v. City of Highland Park,* 195 F.3d 333, 338-39 (7th Cir. 1999).

GAO contends that Diersen fails to present a *prima facie* case of discrimination. The Court agrees. Diersen fails to establish the third and fourth prongs required to make a *prima facie* showing of discrimination. Furthermore, Diersen cannot show that the legitimate reasons GAO gave for its employment decisions were pretextual.

## A.    Diersen Cannot Show That He Suffered an Adverse Employment Action

An adverse employment action involves a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Fortier v. Ameritech Mobile Comms. Inc.,* 161 F.3d 1106, 1112 n.7 (7th Cir.1998). Diersen cannot show that the GAO decisions he complains of rise to the level of adverse actions.

### 1.    The 1997 Performance Evaluation

A negative performance evaluation generally does not constitute an adverse employment action unless it substantially affects an employee's salary or responsibilities. *See Grube v. Lau Indus., Inc.,* 257 F.3d 723, 729 (7th Cir. 2001); *Smart v. Ball State Univ.,* 89 F.3d 437, 442 (7th Cir. 1996).

17

Diersen cannot show that the 1997 performance evaluation cost him a promotion, diminished his chance for a pay increase, or resulted in a demotion. In Diersen's 1997 performance evaluation, Trop rated Diersen as Outstanding in two performance areas, as Exceeds Fully Successful in three areas, and as Fully Successful in two areas. Although Pay-for-Performance rankings generally base an employee's pay increases and bonuses on his or her performance appraisals, Diersen does not establish that his 1997 performance evaluation resulted in a decreased bonus or salary. Moreover, Diersen fails to show how the ratings were "adverse" or atypical at all. It is undisputed that in the course of the 1995-97 performance ratings, each year one or more FIMI staff members were assessed as Fully Successful in one or more performance areas. Diersen cannot show that his 1997 performance evaluation rises to the level of an adverse action.

### 2. The Denial of Diersen's 1997 Request for Reassignment to OSI

The denial of a transfer does not constitute an adverse employment action. *Hedberg v. Rockford Stop-N-Go, Inc.*, No. 97 C 50367, 1999 WL 1100303, at *3 (7th Cir. 1999). Because GAO's refusal to transfer Diersen to OSI simply maintained the *status quo*, it accordingly did not result in a significant change in his employment status. Diersen offers no evidence that GAO's refusal to reassign him to OSI cost him new benefits or caused him to lose current benefits, salary, or responsibilities. It is undisputed that GAO did not have a current or foreseeable future need for additional OSI personnel resources in Chicago, and never contemplated the option of a second person working in OSI in Chicago. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). GAO's refusal to reassign Diersen simply does not rise to the level of an adverse action.

### 3. Diersen Cannot Show That His Decision to Take Early Retirement Was a Constructive Discharge

To show a constructive discharge, the employee must "demonstrate a discriminatory work environment 'even more egregious than the high standard for [a] hostile work environment,'" *Equal Employment Opportunity Comm'n v. Univ. of Chicago Hosps.,* 276 F.3d 326, 331-32 (7th Cir. 2002) (citation omitted), such that quitting is the only way for the employee to extricate himself from an intolerable and hostile work environment. *Sweeney v. West,* 149 F.3d 550, 557-58 (7th Cir. 1998). The question whether working conditions are sufficiently unbearable is assessed from the objective viewpoint of a "reasonable person." *Drake v. Minn. Min. & Mfg. Co.,* 134 F.3d 878, 886 (7th Cir. 1998).

Diersen cannot show that his early retirement was a constructive discharge. Diersen describes his work environment as "a living hell," but fails to put forth any evidence of a discriminatory work environment so intolerable that a reasonable person would have been compelled to resign. While his lower-than-expected 1997 performance evaluation and the denial of his request for reassignment may have been disappointing to Diersen, they are a far cry from a constructive discharge.

### B. Diersen Cannot Show That He Was Treated Differently From Similarly Situated Employees Who Were Not in His Age, Race, or Gender Group

A similarly situated employee is one who is "directly comparable in all material respects," such that the employees possess similar attributes, experience, education, and qualifications relevant to the job action. *Rogers v. City of Chicago,* 320 F.3d 748, 755 (7th Cir. 2002). Diersen does not put forth evidence that similarly situated colleagues who were younger or female or members of a protected racial minority received higher 1997 performance

evaluations than he did. Diersen cannot show that similarly situated colleagues who were younger or female or members of a protected racial minority were reassigned to the OSI group. In fact, no employee was reassigned to the OSI group in 1997 because OSI did not have any available positions.

### C. Diersen Cannot Show That GAO's Proffered Reasons for its Conduct Were Pretextual

Once the employer articulates a non-discriminatory reason for its conduct, the employee must produce either direct evidence of discrimination or evidence of pretext. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1399-1400 (7th Cir. 1997). "A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir.1997). "Pretext" means a lie or a false reason for some action, or a dishonest explanation. *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000). To show pretext, Diersen must present evidence from which the Court may infer that GAO did not, at the time of Diersen's retirement, honestly believe the reasons GAO gave for his 1997 performance evaluation, their refusal to reassign him to GAO, and the circumstances surrounding his decision to retire early. *See McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992).

GAO offered legitimate reasons for engaging in the employment decisions that Diersen characterizes as "adverse actions." Diersen cannot show that those reasons are pretextual.

### 1. Diersen's 1997 Performance Evaluation

It is undisputed that Trop gave Diersen a lower rating in 1997 than in previous years

because she believed that Diersen had been under significant stress throughout the 1997 review period, which appeared to affect his relationship with his core-group members. Diersen does not dispute that during the 1997 review period he had represented himself in four separate legal disputes, had undergone surgery, had completed a master's degree, and was dealing with a staff member with performance problems. It is also undisputed that over the final five months of the 1997 review period, Trop had to substantially revise virtually all of the work Diersen submitted to her. Diersen offers no evidence that GAO's explanation for his 1997 performance evaluation is a lie offered by GAO to hide a discriminatory motive.

### 2. Diersen's Request for Reassignment to OSI

Diersen offers no evidence that GAO's refusal to reassign him to OSI was a pretext. It is undisputed that at the time Diersen made his request, the Chicago Office had only one full-time employee working in the OSI group, Robert Lippencott. It is also undisputed that there was not always enough work to support Lippencott's position, there was never a vacancy for that position, and there was no current or foreseeable future need for additional OSI personnel resources in Chicago. GAO never contemplated the option of a second person working in OSI in Chicago, and GAO could not justify the option of a second person working in OSI in Chicago. Diersen offers no evidence that GAO's explanation for its refusal to reassign Diersen to the OSI office is false.

### 3. Diersen's Decision to Retire Early

Diersen cannot show that GAO's explanation for the circumstances surrounding Diersen's decision to take early retirement was a pretext. As discussed above in section II.A.3, Diersen cannot show that his decision to retire early was a constructive discharge. GAO

contends that Diersen retired because early retirement was available and because he threatened to take early retirement if he did not get the OSI reassignment he wanted. (R. 125-1, Def.'s Reply Br. in Supp. of its Mot. for Summ. J. at 13-14.) It is undisputed that Diersen told Herman that, if he did not get the OSI assignment, he would retire and file an EEO complaint. It is also undisputed that Diersen declined his EEO counselor's suggestion to rescind his retirement. Diersen fails to show that GAO fabricated the reason Diersen took early retirement.

## III.    Diersen Cannot Show That GAO Retaliated Against Him

Diersen cannot make out a *prima facie* showing on his retaliation claim based upon events after September 1997. Diersen contends that GAO retaliated against him by failing to properly and fairly resolve his EEO complaint, and by sabotaging his job search by providing him with three insufficiently positive letters of recommendation for him after he retired. (R. 37-1, Compl. ¶¶ 76, 78.) He claims GAO retaliated against him for filing an EEO complaint, contacting elected officials about GAO's alleged discrimination, filing this lawsuit, and posting his claims on the internet. (*Id.* at ¶ 86.)

A plaintiff may establish a *prima facie* case of retaliation either by showing direct evidence of retaliation, or under the indirect method, an "adaptation of *McDonnell Douglas* to the retaliation context." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 643-44 (7th Cir. 2002). Under the indirect method, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* Once the plaintiff establishes these elements, the burden shifts to the

22

defendant to come forward with a legitimate, non-invidious reason for the adverse employment action. *Id.* Although the burden of production shifts to the defendant under this method, "the burden of persuasion rests at all times on the plaintiff." *Klein v. Trs. of Ind. Univ.*, 766 F.2d 275, 280 (7th Cir. 1985). Once the defendant presents a legitimate, non-invidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Haywood*, 323 F.3d at 531. Diersen has not provided any direct evidence of retaliation. Therefore, he must again proceed under the indirect method.

Diersen's case fails because he cannot show that he was treated less favorably than similarly situated employees who did not complain. He offers no evidence that his EEO investigation was conducted differently from any similarly situated colleague, nor that GAO's conduct with respect to his job search was different for him than it was for any similarly situated colleague.

He further cannot show that he was subject to an adverse employment action. *O'Donnell*, 2003 WL 22339285, at *3-4. Diersen cannot show that the three letters of recommendation changed his working conditions in a material way. Diersen admits that GAO provided him with three letters of recommendation, but argues that "GAO did so only reluctantly and none of the letters contained a 'strong' recommendation." (R. 37-1, Compl. ¶ 45.) It is undisputed, however, that Aronovitz believed that the letter of recommendation she provided Diersen was "very good." Moreover, Diersen cannot tie these three allegedly lukewarm letters of recommendation to any specific job action.

Similarly, Diersen cannot claim that the EEO investigation itself constituted an adverse action because it was improper, unfair, or biased. Federal employees do not have a cause of

action for a claim that an employer failed to properly process an EEO complaint. *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000).

## CONCLUSION

Diersen has failed to present a *prima facie* case of age discrimination, reverse discrimination, or retaliation. Accordingly, GAO's motion for summary judgment is granted in its entirety.

Dated: November 3, 2003                    ENTERED

AMY J. ST. EVE
United States District Court Judge